UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CRYSTAL AMMONS,

          Plaintiff,

      v.

STATE DEPARTMENT OF SOCIAL AND
HEALTH SERVICES; NORM WEBSTER,
individually and in his official capacity acting
under color of state law; and MARY
LAFOND, individually and in her official
capacity acting under color of state law,

          Defendants.

Case No. C 08 -5548RBL

ORDER DENYING
MOTIONS FOR
SUMMARY JUDGMENT

This Matter is before the Court on the following Motions: Plaintiff Ammons' Motion for Summary Judgment [Dkt # 33] and Defendants' Motion for Summary Judgment [Dkt. #40]. Plaintiff seeks a ruling as a matter of law that each defendant is liable to her for the sexual abuse she suffered while under their care. On the other hand, LaFond and Webster seek summary dismissal of the claims against them, asserting the defense of qualified immunity. DSHS seeks summary judgment on Plaintiff's negligence claim.

Because the resolution of each claim and defense requires the resolution of a number of genuine issues of material fact, both Motions are DENIED.

**A.    Factual Background.**

This case involves a sexual relationship between a teenage girl, Plaintiff Crystal Ammons, and one of her counselors at the DSHS' Child Study and Treatment Center (CSTC), Anthony Grant. The CSTC is

ORDER
Page - 1

1 | a psychiatric hospital; residents there are both patients and in the custody of the CSTC.

2 |     The sexual relations occurred on and off campus for more than three months in the spring of 2003.

3 | The relationship was discovered by Crystal's foster mother in May 2003, about a month after she was

4 | discharged from the CSTC. When the relationship was disclosed to CSTC, Grant was immediately placed

5 | on leave and eventually terminated. The gist of the Defendants' claim is that the relationship was not known

6 | to anyone outside the participants, and the Defendants had no reason to know it existed. All Defendants deny[1]

7 | any knowledge that Grant had any dangerous proclivities. Thus, they claim, LaFond (DSHS' Chief Executive

8 | Officer between 1995 and the end of March, 2003), and Webster (who succeeded her in that position), are

9 | qualifiedly immune from the plaintiff's claims.

10 |     The Plaintiff argues that DSHS, CSTC, and both individual defendants know or should have known

11 | of Anthony Grant's "dangerous proclivities" based at least in part on the fact that a different teenage female

12 | CSTC resident, "A.C.," had previously (in 2001) complained about sexual assault by Anthony Grant. *See*,

13 | for example, Exhibits to Moody Dec.[Dkt. #34] and the Declaration of the victim in the prior incidents [Dkt.

14 | #39]. Indeed, viewed in the light most favorable to the Plaintiff, the evidence rather "overwhelmingly"

15 | suggests that sexual abuse at the CSTC was rampant, and specifically that the particular counselor at issue

16 | – Grant – had engaged in a variety of questionable conduct with female residents of the CSTC. There is also

17 | evidence supporting the allegation that the female patients openly displayed inappropriate exhibitions of their

18 | affection and attraction to Mr. Grant at the hospital. Plaintiff alleges that Grant was the subject of other CPS

19 | investigations while he was employed at the hospital, and that CTSC staff had expressed to DSHS concerns

20 | about Grant's inappropriate "boundaries" around female patients, including specifically the Plaintiff.

21 |     By November 2002, Plaintiff's foster mother had concerns about Grant's relationship with her, and

22 | she expressed these concerns to Ilys Hernandez, who was the head of the CSTC "cottage" where Plaintiff

23 | resided, in a "face to face" meeting. [*See* Dkt. #37]

24 |     Hernandez claims that while she was aware that Crystal and another patient were "infatuated" with

25 | Mr. Grant, she did not know that he was having any sort of relationship with Crystal. She agreed that Grant

26 | should not have "alone time" with Crystal, and she did not report any of the concerns she did have to LaFond

27 |

28 | [1]Defendants also suggest that the claimed assaults may not have in fact occurred, but they terminated Mr. Grant because of them, and their own internal documents strongly support their own conclusion that they did occur.

ORDER
Page - 2

1    or Webster.

2         Defendant LaFond has filed an affidavit acknowledging her responsibility for oversight of all of the

3    CSTC's operations, but denying that she ever was told or knew of any concerns that Grant was having an

4    inappropriate relationship with any patient.  With respect to the prior patient (LaFond calls her "Resident A,"

5    but it is the same person described elsewhere as "A.C."), LaFond claims that the allegations were reported

6    to Child Protective Services, investigated, and determined to be more likely than not without merit. [Dkt. #45

7    at pp.5-6].  She denies ever being told of any other concerns regarding Mr. Grant, until she learned (after she

8    had left CSTC) that there had been a relationship.

9         Defendant Webster simply denies that he was ever told of any special concerns regarding Anthony

10   Grant or his behavior prior to May, 2003, when Crystal's foster mother reported that she had discovered email

11   correspondence between Crystal and Grant suggesting an intimate relationship. [Dkt. #41]

12        Defendant DSHS similarly denies on an institutional basis any knowledge of the activities of Mr,

13   Grant.   On this "we did not know" basis, Defendants argue that they were at most negligent and not

14   deliberately indifferent, and that they are entitled to judgment as a matter of law.

15   **B.    Summary Judgment Standard.**

16        Summary judgment is appropriate when, viewing the facts in the light most favorable to the

17   nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a

18   matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-

19   moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file,

20   "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

21   (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not

22   sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose

23   resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary

24   judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment

25   should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder]

26   could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

27   **C.    Qualified Immunity.**

28        The doctrine of qualified immunity shields executive officers from civil suit for conduct that "does

     not violate any clearly established statutory or constitutional rights of which a reasonable person would have

ORDER
Page - 3

1   known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity applies when the facts, taken

2   in the light most favorable to the party asserting the injury, show either that the officer's conduct did not

3   violate a constitutional right, or that a reasonable officer could think his conduct was lawful in the situation.

4   *Saucier v. Katz*, 533 U.S. 194, 201, 202 (2001).

5         Qualified immunity shields government officials performing discretionary acts from liability for

6   conduct that in fact violates a constitutional right, so long as a reasonable official could think the conduct

7   lawful: "qualified immunity shields an officer from suit when she makes a decision that, even if

8   constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."

9   *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. at 206).  "If the law at that

10  time did not clearly establish that the official's conduct would violate the Constitution, the official should not

11  be subject to liability or, indeed, even the burdens of litigation." *Brosseau*, 543 U.S. at 198.  In determining

12  whether a right is clearly established, the level of abstraction at which the right is stated must be

13  particularized to the case, and not as a broad proposition: "the contours of the right must be sufficiently clear

14  that a reasonable official would understand that what he is doing violates that right." *Saucier,* 533 U.S. at 202.

15

16        Government officials performing discretionary functions generally are shielded from liability for civil

17  damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

18  which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. at 818.

19        In analyzing a qualified immunity defense, the Court must determine first whether a constitutional

20  right would have been violated on the facts alleged, taken in the light most favorable to the party asserting

21  the injury; and, then, whether the right was clearly established when viewed in the specific context of the

22  case. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  The relevant dispositive inquiry in determining whether

23  a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful

24  in the situation he confronted.  *Id*.  The Supreme Court has recently held "that the *Saucier* protocol

25  [determining whether a violation is present in the first instance] should not be mandatory in all cases . . . [but]

26  it is often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

27  **D.    For purposes of opposing Summary Judgment, Plaintiff has established a Constitutional
        Violation, and Defendants have not established their entitlement to qualified immunity**.

28
        The Plaintiff claims she has a Constitutionally-protected substantive due process right to safe

1   conditions while in the custody of the state.  *See*, for example, *Youngberg v. Romero*, 457 U.S.S 307 (1982).

2   She claims that Defendants LaFond and Webster were deliberately indifferent to a known risk to her civil

3   rights, and that that indifference led to Grant's sexual assault on her.

4          Defendants do not seriously dispute that a patient in the custody of a state psychiatric hospital has a

5   right to safety and bodily integrity, and do not strenuously contend that this right would not be known to a

6   reasonable state actor in their respective positions.. Defendants Motion is based on the general rule that

7   members of the public have no constitutional right to sue state officials who fail to protect them from harm

8   inflicted by others.  *See DeShaney v. Winnegago County Dep't of Social Serv.*, 489 U.S. 189, 195 (1989).

9   Defendants recognize that there are two exceptions to this rule: (1) the"special relationship" exception, and

10  (2) the "state created danger" exception.  Defendants argue that neither applies.

11         LaFond and Webster argue that the state created danger exception applies only if they engaged in

12  affirmative conduct which placed Plaintiff in danger she would not have otherwise faced. *See L.W. v. Grubbs*,

13  974 F.2d 119 (9th Cir. 1992). They claim they are entitled to qualified immunity because their failure to

14  ascertain and act upon the risk that Mr. Grant posed to Plaintiff was at most negligence, and was not the

15  "deliberate indifference" required for Plaintiff to survive Summary Judgment. Factually, this argument is

16  based on the individual defendants' own testimony that they did not know and had no reason to know that

17  Grant was a danger to plaintiff.

18         This claim, in turn, requires the Defendants to explain the undisputed fact that there was a prior

19  complaint made by a different teenage female patient, A.C.  Defendants effort to gloss over this fact are based

20  on their assertion that only a very few such reports have been deemed to be accurate, and their claim that

21  Eavanne O'Donoghue the CPS/DLR supervisor who investigated A.C.'s claim determined that it was

22  unfounded.     This point is hotly contested, and the evidence is conflicting as to whether the alleged assault

23  by Grant on A.C. actually occurred.

24         Plaintiff responds first by pointing out that the failure to act can be the basis for §1983 liability. *Neely*

25  *v. Feinstein*, 50 F.3d 1502 (9th Cir. 1995).   The Defendants' claim that LaFond and Webster did not

26  *affirmatively act* to place Crystal Ammons in danger is not a defense to the Plaintiff's constitutional claim.

27         Plaintiff also correctly argues that her deliberate indifference claim is not defeated (at least not as a

28

ORDER
Page - 5

1   matter of law) by the Defendants' claim that they did not know[2] of any danger.   *Neely* explained that there

2   is no "subjective awareness" test for determining whether an official acted with deliberate indifference. *Id.*

3   at 1508.

4       Instead, the question is an objective one. *See Youngberg*, 457 U.S. at 323.  *See also Estate of Conners*

5   *by Meredith v. O'Connor*, 846 F.2d 1205 (9th Cir. 1988) (liability may be imposed [when] . . . [the official's]

6   decision is so ***objectively*** unreasonable as to demonstrate that he or she actually did not base the challenged

7   decision upon professional judgment).  As Plaintiff argues, the *Youngberg* "professional judgment" standard

8   for measuring the reasonableness of psychiatric hospital administrator's decisions is an ***objective*** test. *Neely*,

9   50 F.3d at 1508.

10

11      Viewed in the light most favorable to the Plaintiff, the evidence supports her claim that there were

12  numerous warnings –  from CSTC staff, plaintiff's foster mother, and based on past allegations of abuse

13  by Grant –  that together required the CSTC administrators to take steps to protect her from the dangers

14  she faced.  Defendants admit they did literally nothing.  Defendants claim that any failure was at most

15  "negligence," as a matter of law, is rejected.  Defendant LaFond and Webster's Motion for Summary

16  Judgment is DENIED.

17

18      Defendant DSHS argues that it did not have the  "special relationship" with plaintiff  required to

19  invoke the other exception to the general rule of non-liability. This argument is similarly precluded by

20  binding precedent.  See *Niece v. Elmview Group Home*, 131 Wn.2d 39, 929 P.2d 420 (1997) ("If ***hospitals***

21  and group homes have a duty to protect their vulnerable residents from visitors and from themselves, then

22  they also ***have a duty to protect their residents from the harm against which they are least able to***

23  ***protect themselves – abuse at the hands of staff***.") (citations omitted, emphasis added.)

24

25      For the reasons discussed above, viewed in the light most favorable to her, the danger and the

26  harm to Plaintiff was foreseeable, and the measures taken to prevent were insufficient.  DSHS's Motion is

27

28      [2]The Defendants' lack of knowledge claim also requires the court to ignore the fact that Plaintiff's own foster mother repeatedly warned CSTC staff that Grant's conduct was inappropriate and that he should not be permitted to have any "alone time" with Plaintiff.

1   similarly DENIED.

2

3   **E.      Plaintiff is not entitled to summary Judgment on liability.**

4         Plaintiff seeks summary judgment on the Defendants' liability on her §1983 claim.  In this

5   context, of course, the evidence must be viewed in the light most favorable to the Defendants.  Each of

6   the factual disputes – including, perhaps most importantly, the veracity of A.C.'s prior assault claim

7

8   against Grant, and the adequacy of the investigation that followed – must be resolved by a trier of fact.

9   Plaintiff's Motion is DENIED.

10        **CONCLUSION**

11        The parties' competing Motions for Summary Judgment [Dkt. #s 33 and 40] are DENIED.

12  IT IS SO ORDERED.

13

14  DATED this 25th day of November, 2009.

15

16                                RONALD B. LEIGHTON
                                  UNITED STATES DISTRICT JUDGE
17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 7